**No. 21-15668**

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

D.H., by and through his mother, Janice Hennessy-Waller; and JOHN DOE, by his guardian and next friend, Susan Doe, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

v.

JAMI SNYDER, Director of the Arizona Health Care Cost Containment System, in her official capacity,

*Defendant-Appellee.*

On Appeal from an Order the United States District Court
For the District of Arizona
No. 4:20-cv-00335-SHR

---

## DEFENDANT-APPELLEE'S ANSWERING BRIEF

---

David T. Barton # 016848
Kathryn Hackett King #024698
BURNSBARTON PLC
2201 E. Camelback Road, Suite 360
Phoenix, Arizona 85016
Telephone: 602-753-4500
david@burnsbarton.com
kate@burnsbarton.com

Logan T. Johnston, #009484
JOHNSTON LAW OFFICES, P.L.C.
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022
Telephone: (602) 435-0050
ltjohnston@live.com

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................. 1

STATEMENT OF THE CASE ................................................................ 2

SUMMARY OF THE ARGUMENT ......................................................... 9

ARGUMENT ................................................................................... 10

    I.     STANDARD OF REVIEW ............................................................ 10

    II.    THE DISTRICT COURT APPLIED THE CORRECT LEGAL
         STANDARD TO OBTAIN A PRELIMINARY INJUNCTION ..... 11

    III.   PLAINTIFFS FAILURE TO APPEAL THE DISTRICT COURT'S
         DECISION REGARDING THEIR MEDICAID ACT CLAIMS IS
         FATAL TO THEIR REQUEST FOR A PRELIMINARY
         INJUNCTION ON APPEAL ........................................................ 15

    IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
         FINDING PLAINTIFFS FAILED TO PROVE THEY WERE
         LIKELY TO SUCCEED ON THE MERITS OF THE EQUAL
         PROTECTION CLAIMS ............................................................. 17

         a.     Elements of the Equal Protection Act Claims ........................ 17

         b.     Plaintiffs Cannot Prove They Were Denied Benefits to Which
              They Were Entitled ............................................................. 18

         c.     Plaintiffs Cannot Prove AHCCCS Discriminates Against
              Transgender People ............................................................ 21

         d.     The District Court's Decision on the Equal Protection Clause
              Claim Passes Constitutional Scrutiny .................................... 26

V.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
       FINDING PLAINTIFFS FAILED TO CLEARLY DEMONSTRATE
       THEY WERE LIKELY TO SUFFER IRREPARABLE HARM ..... 30

VI.    PLAINTIFFS' REQUESTED RELIEF IS IDENTICAL TO THE
       ULTIMATE RELIEF REQUESTED ................................................ 33

CONCLUSION ................................................................................................... 34

STATEMENT OF RELATED CASES ................................................................. 35

CERTIFICATE OF SERVICE ............................................................................. 36

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. United States*, 6
    12 F.2d 1112 (9th Cir. 1979)............................................................12, 13

*Beal v. Doe,*
    432 U.S. 438 (1977) ....................................................................18

*Bell v. Tavistock & Portman NHS Foundation Trust*,
    2020 EWHC 3274 (Dec. 1, 2020) ...........................................28

*Bostock v. Clayton Cnty., Ga.,*
    140 S.Ct 1731 (2020) ..................................................................23

*Boyden v. Conlin*,
    341 F. Supp. 3d 979 (W.D. Wis. 2018) .......................................21, 24

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ....................................................................28

*Dahl v. HEM Pharm. Corp.*,
    7 F.3d 1399 (9th Cir. 1993)........................................................12, 14

*DISH Network Corp., v. F.C.C.*,
    653 F.3d 771 (9th Cir. 2011).......................................................10, 11

*Earth Island Inst. v. Carlton*,
    626 F.3d 462 (9th Cir. 2010).......................................................10, 34

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019).......................................................29

*Flack v. Wis. Dep't of Health Servs.*,
    331 F.R.D. 361 (W.D. Wis. 2019) .............................................21, 24

*Flack v. Wisc. Dep't of Health Servs.*,
    395 F. Supp. 3d 1001 ("Flack II") ...........................................24

*Fletcher v. Alaska*,
443 F. Supp. 3d 1024 (D. Alaska 2020)................................................................21

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015)......................................................................10, 11

Gibson v. Collier,
920 F.3d 212 (5th Cir. 2019)...........................................................................29

Heckler v. Lopez,
463 U.S. 1328 (1983).................................................................................12, 15

*Hernandez v. Sessions*,
872 F.3d 976 (2017).................................................................................14, 31

*Kadel v. Folwell*,
446 F. Supp. 3d 1 (M.D.N.C. 2020).........................................................21, 23, 24

*Katie A. ex rel. Ludin v. L.A. Cnty.*,
481 F.3d 1150 (9th Cir. 2007)...........................................................................15

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012)............................................................................2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................25

*Maher v. Roe*,
432 U.S. 464 (1977)........................................................................................27

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009).......................................................................12, 31

*Mazurek v. Armstrong*,
520 U.S. 968 (1997).....................................................................................2, 12

*Meghrig v. KFC W., Inc.*,
516 U.S. 479 (1996)........................................................................................12

*Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*,
971 F.3d 1021 (9th Cir. 2020).......................................................................1, 11

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
    508 U.S. 656 (1993) ........................................................................... 25

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    960 F.3d 603 (9th Cir. 2020) ............................................................ 15

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
    636 F.3d 1150 (9th Cir. 2011) .......................................................... 30

*See Toomey v. State of Arizona, et al.*,
    No. CV-19-00035-TUC-RM, Doc. 162 ............................................ 32

*Sports Form, Inc. v. United Press Int'l, Inc.*,
    686 F.2d 750 (9th Cir. 1982) ...................................................... 10, 11

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ...................................................... 12, 13

*Sw. Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) ............................................................ 11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    535 U.S. 302 (2002) ......................................................................... 16

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
    316 F.2d 804 (9th Cir. 1963) ............................................................ 33

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) .................................................... 10, 34

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................... 1, 11, 30

## STATUTES

28 U.S.C. § 1292 ....................................................................................... 1

28 U.S.C. § 1331 ....................................................................................... 1

29 U.S.C. § 1396(r)(5) ............................................................................. 15

42 U.S.C. § 1396a(A)(30)(A) ..................................................... 19, 27, 30

42 U.S.C. § 1396d(a) ................................................................................26

42 U.S.C. § 18116(a) ...............................................................................18

42 U.S.C. § 18166 .....................................................................................1

42 U.S.C. §§ 1396–1396w-5 .....................................................................1

## REGULATIONS

Arizona's Administrative Code R9-22-205 .........................1, 2, 13, 21, 33

## CONSTITUTIONAL PROVISIONS

Equal Protection Clause of the Fourteenth Amendment to the United States
  Constitution .........................................................................................1

## STATEMENT OF JURISDICTION

Plaintiffs allege that Arizona's Administrative Rule R9-22-205(B)(4)(a) (the "Rule") violates various provisions of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396w-5 ("Medicaid Act"), Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18166 ("Section 1557"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause"). The District Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331. On March 30, 2021, the District Court issued an Order denying Plaintiff's Motion for Preliminary Injunction, in which Plaintiffs asked the District Court to enjoin Defendant from further enforcement of the Rule and to "order AHCCCS to cover male chest reconstruction surgery for D.H. and John." ER 04. Plaintiffs filed their Notice of Preliminary Injunction Appeal on April 15, 2021. This Court has jurisdiction pursuant to 28 U.S.C. § 1292.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A plaintiff seeking a preliminary injunction must make a clear showing that "he is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*, 971 F.3d 1021, 1027 (9th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th

Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Plaintiffs did not make such a showing because, at a minimum, they did not clearly demonstrate they are likely to succeed on the merits of their claims or they have suffered irreparable harm. On these facts, did the District Court abuse its discretion in denying Plaintiffs' Motion for Preliminary Injunction?

## STATEMENT OF THE CASE

When the lawsuit was filed, D.H. was 17 years old and John Doe was 15 years old. Both are enrolled in in Arizona's Medicaid program, known as Arizona Health Care Cost Containment System ("AHCCCS"). ER 493-519, ¶ 1. D.H. and John were born as females and have been undergoing medical treatment for gender dysphoria, including counseling and hormone therapy, which has been covered through AHCCCS. ER 493-519, ¶¶ 5, 7, 79, 97. By way of this lawsuit, Plaintiffs demand that AHCCCS pay for them to undergo chest reconstruction surgery – the permanent removal of their breasts. ER 493-519, ¶ 1. AHCCCS, however, does not provide coverage for "gender reassignment surgeries," like it does not cover several other procedures such as infertility services, services furnished solely for cosmetic purposes, or hysterectomies that are not medically necessary. Ariz. Admin. Code R9-22-205(B)(4).

In the Complaint, Plaintiffs allege[1] AHCCCS's decision not to provide coverage for gender reassignment surgery violates the Medicaid Act's EPSDT's Requirements (Count I), the Medicaid Act's Comparability Requirement (Count II), Section 1557 (Count III), and the Equal Protection Clause (Count IV). Plaintiffs filed a Motion for Preliminary Injunction asking the Court "to preliminarily enjoin Defendants [sic] from further enforcement of the regulation and order AHCCCS to cover male chest reconstruction surgery for D.H. and John." ER 475. Plaintiffs argued AHCCCS's denial of coverage was a violation of the Medicaid Act and unlawful discrimination on the basis of sex under Section 1557 and the Equal Protection Clause.

D.H presented his own declaration in support of his request as well as declarations from his mother, counselor, and pediatrician. ER 438-455. John's petition was supported by his own declaration and the declaration of his grandmother and clinical social worker. ER 456-472. Plaintiffs also presented declarations from a psychiatrist and a surgeon, both of whom are members of the World Professional Association for Transgender Health ("WPATH"), but neither of whom has treated D.H. or John. ER 337-437. Neither Plaintiff presented any

---

[1] While D.H. and John Doe are identified as the Plaintiffs in this case, this case is being pursued by two advocacy groups – the National Center for Lesbian Rights and the National Health Law Program. *See* identification of counsel on all pleadings.

evidence from a treating psychiatrist or psychologist. And despite their claim of medical necessity, Plaintiffs refused to produce their medical records to Defendant. Nevertheless, it is clear from the Complaint and Motion for Preliminary Injunction that both adolescents are extraordinarily vulnerable and have a significant and lengthy history of psychiatric issues that pre-date their gender dysphoria.

D.H. had "significant psychological distress at an early age, including severe anxiety and suicidal ideation" and was placed in in-patient psychiatric treatment facilities on several occasions. ER 493-519 ¶ 6. Since he was a young child, D.H. has exhibited significant signs of psychological distress including anxiety, insomnia, and crying episodes; he also had "other stressors" in his life beyond those related to gender dysphoria. ER 493-519 ¶¶ 69-70. At age 13, D.H. informed his mother he is transgender and thereafter, began to socially transition to male (meaning, using a male name, dressing in boy's clothing, using different pronouns, etc.) and started hormone replacement therapy (testosterone) – a treatment to halt the effects of estrogen and make his appearance more masculine. ER 493-519 ¶¶ 7, 75, 79.

John's guardian is his grandmother because his biological parents were unable to care for him and provide a stable home environment; he suffers chronic post-traumatic stress disorder stemming from early-life attachment trauma which makes his mental health "particularly fragile." ER 458 ¶ 11; 463 ¶ 5; 493-519 ¶

89.  John also suffers from depression and anxiety and he has engaged in self-harm through cutting and burning.  ER 458 ¶ 13; 468 ¶ 5.  At age 11, John began to socially transition to male and was prescribed hormone therapy.  ER 493-519 ¶¶ 11, 97.

Defendant is not indifferent to the trauma and emotional distress suffered by D.H. and John, and AHCCCS has provided coverage to both Plaintiffs in the form of counseling, psychotherapy, and medications.  But out of that same concern, Defendant has provided expert testimony in this case that casts serious doubt on the question of whether the permanent removal of one's breasts is a safe and effective treatment for children or adolescents – particularly these adolescents.  ER 181-250, 251-269, 270-289.  Quality studies showing that chest reconstruction surgery is safe, effective, and optimal for treating children and adolescents with gender dysphoria do not exist.  ER 262 ¶ 34.  And there is evidence that the long-term effectiveness of gender reassignment surgery on young people is not favorable.  ER 251-269 ¶¶30-38; 181-250 ¶¶ 69-82, 96-98, 113-114.  The standards of care relied upon by Plaintiffs are prepared by an advocacy group (WPATH), they have limitations as a result of the lack of rigorous research in the field, they do not capture clinical experiences of many in the medical profession, and there are serious questions about WPATH's scientific process.  ER 181-250 ¶¶43-51; 251-269 ¶33.  In addition, there are no laboratory, imaging, or other

objective tests to predict whether children with gender dysphoria will outgrow the condition; indeed, the DSM V confirms that a large majority of children will outgrow the condition by adulthood if left untreated. ER 181-250 ¶28, 56, 58-60; 251-269 ¶22, 40. Moreover, this is a vulnerable population, as a high percentage of children diagnosed with gender dysphoria suffer from other comorbidities, including depression, anxiety, or other mental health disorders. ER 251-269 ¶¶ 13, 23; 181-250 ¶¶55, n.7. Many had their first contact with psychiatric services for reasons other than their gender identity (Id.) – as is the case with D.H. and John. Despite these vulnerabilities, WPATH contends that "affirmation" or transition in the form of hormone blockers (intended to slow or stop the natural maturation process), followed by cross-hormone therapy, and leading to irreversible surgery is the "only effective treatment" for the psychological issues these children face. *See*, Plaintiffs' Opening Brief ("OB")[2] at 4.

Defendant's expert, who is a former member of WPATH, opined that the "affirmation model" for treating gender dysphoria is not supported by science and disregards basic principles of child development and family dynamics. ER 181-250 ¶¶ 36-42, 61-67. Defendant also presented expert testimony that a young person's psychological disorders should be thoroughly treated before considering gender reassignment surgery, and there is insufficient evidence that D.H. or John's

---

[2] Plaintiffs' Opening Brief, Doc. 5, will be referred to by the initials "OB."

psychiatric issues have been thoroughly evaluated and treated. ER 251-269 ¶23; 181-250 ¶¶23, 27-35. Additionally, it is undisputed that a final assessment has never been conducted on either Plaintiff to determine suitability for surgery. ER 352 ¶ 45.

Defendant provided additional evidence that (i) surgery as a treatment for gender dysphoria is just one of several services AHCCCS does not cover, (ii) AHCCCS does provide coverage for some services for transgender youth with gender dysphoria, including counseling, psychotherapy, and hormone therapy, and therefore its decision to not cover gender reassignment surgery is a limitation on benefits, not discrimination toward transgender people, and (iii) AHCCCS has a statutory mandate to ensure "efficiency, economy and quality of care" in the provision of Medicaid services. That important governmental interest is directly and substantially promoted through an exclusion on "the irreversible surgery Plaintiffs seek," which the District Court found has not been proven medically necessary or "safe and effective for adolescents." ER 8-9, 15.

Following briefing and oral argument, the District Court denied Plaintiffs' motion, finding Plaintiffs failed to prove they are likely to prevail on the merits of their claims because they have not clearly shown the surgery they seek is medically necessary for them, that it is a safe and effective treatment for gender dysphoria in adolescents, or that AHCCCS's failure to provide coverage for gender

reassignment surgery violates the Medicaid Act, Section 1557 or the Equal Protection Clause. The District Court also denied Plaintiffs' motion because they failed to meet their burden of demonstrating that irreparable harm is likely in the absence of an injunction. Finally, the District Court determined that the injunctive relief Plaintiffs sought in their motion was the same as the ultimate relief sought in the underlying Complaint, and therefore a preliminary injunction was inappropriate. ER 3-22.

Plaintiffs then filed the instant appeal, but only with respect to the District Court's order regarding their claims under Section 1557 and the Equal Protection Clause ("the Equal Protection Claims"). Plaintiffs did not appeal the District Court's Order regarding their Medicaid Act claims. But the Plaintiffs' entitlement under the Medicaid Act to the specific services they have requested is a necessary predicate for Plaintiffs' Equal Protection Claims. Because Plaintiffs did not appeal the District Court's Order regarding the Medicaid Act claims, their Equal Protection Claims must fail.

The record demonstrates that the District Court did not abuse its discretion in deciding that – at this early stage of the litigation – Plaintiffs have not proven that the irreversible surgery Plaintiffs want AHCCCS to pay for is medically necessary for them, or it is safe or effective for adolescents generally. Similarly, the law and the evidence demonstrate the District Court did not abuse its discretion

in determining that Plaintiffs did not prove that extreme or very serious harm is likely to occur in the absence of preliminary relief. The facts and law do not "clearly favor" the Plaintiffs' claims; indeed, their claims are doubtful, and AHCCCS has satisfied its burden to prove a nondiscriminatory and lawful justification for the funding decision codified in the Rule. Consequently, Defendant respectfully requests this Court affirm the decision of the District Court.

## SUMMARY OF THE ARGUMENT

The law does not require AHCCCS to pay for services that are not safe and effective, nor medically necessary. The evidence Plaintiffs presented in support of their Motion for Preliminary Injunction was contradicted by credible, scientific evidence. After reviewing that evidence, the District Court determined Plaintiffs failed to prove that the surgeries they seek are a safe and effective treatment for gender dysphoria in adolescents or medically necessary for the Plaintiffs. Plaintiffs do not appeal that determination. Rather, they argue that this Court should nevertheless grant the relief they seek based solely on their Equal Protection Claims. But in the absence of medical necessity, Plaintiffs cannot prove they have been unlawfully denied any benefit guaranteed by Section 1557 or the Constitution. In addition, the District Court properly applied the law and determined Plaintiffs had not proven they were likely to succeed on their claims or that extreme or very serious damage would result in the absence of preliminary

relief.  On this record, this Court cannot find the District Court abused its

discretion in denying Plaintiffs' Motion for Preliminary Injunction.

## ARGUMENT

### I.     STANDARD OF REVIEW

The grant or denial of a motion for a preliminary injunction lies within the

discretion of the district court.  *Sports Form, Inc. v. United Press Int'l, Inc.*, 686

F.2d 750, 752 (9th Cir. 1982).  The parties do not dispute that this Court reviews a

district court's denial of a preliminary injunction for abuse of discretion. OB at 7.

A district court abuses its discretion only if it uses an erroneous legal standard or it

makes clearly erroneous findings of fact, such that its application of the legal

standard was "illogical, implausible, or without support in inferences that may be

drawn from facts in the record."  *United States v. Hinkson*, 585 F.3d 1247, 1262

(9th Cir. 2009) (en banc); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir.

2010).

The district court's interpretation of the underlying legal principles is

reviewed *de novo*.  *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015) (citing

*DISH Network Corp., v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011)).  "However,

unless the district court's decision relies on erroneous legal premises, it will not be

reversed simply because the appellate court would have arrived at a different result

if it had applied the law to the facts of the case." *Sports Form,* 686 F.2d at 752.

The court of appeals is not empowered to substitute its judgment for that of the district court. *Id*.

This Court's review of a preliminary injunction decision is "limited and deferential." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). In conducting this narrow review, the Court is not called upon to determine the ultimate merits of Plaintiffs' claims; rather, the Court considers "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fyock*, 779 F.3d at 995 (quoting *DISH Network*, 653 F.3d at 776); *see also Sports Form*, 686 F.2d at 753. The appellate court's task is to determine only whether the district court "correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand." *Fyock*, 779 F.3d at 995. In performing this task, the Court's review is "restricted to the limited record available to the district court when it granted or denied the motion." *Sports Form*, 686 F.2d at 753.

## II. THE DISTRICT COURT APPLIED THE CORRECT LEGAL STANDARD TO OBTAIN A PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must establish: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. *Monarch*, 971 F.3d at 1027 (citing *Winter*, 555 U.S. at 20).

The United States Supreme Court has made clear: "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). The standard for obtaining a preliminary injunction is heightened when a party seeks a "mandatory" rather than a "prohibitory" injunction. A prohibitory injunction restrains action until the court can hear the case on the merits. *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). On the other hand, mandatory injunctions order a party to "take action" rather than simply maintaining the status quo. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996); s*ee also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory injunctions are "particularly disfavored." *Stanley*, 13 F.3d at 1320; s*ee also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 87879 (9th Cir. 2009). Mandatory injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993); *Marlyn*, 571 F.3d at 878-79. Indeed, mandatory injunctions "are not granted unless **extreme or very serious damage will result** and are not issued in **doubtful cases** or where the injury complained of is capable of compensation in damages." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (emphasis added). "When a mandatory preliminary injunction is requested, the *district court should*

*deny such relief* 'unless the facts and law clearly favor the moving party.'"
*Stanley*, 13 F.3d at 1320 (quoting *Anderson*, 612 F.2d at 1114) (emphasis added).

Here, the relief Plaintiffs requested in the Motion for Preliminary Injunction is "to enjoin Defendants [sic] from further enforcement of the regulation and order AHCCCS to cover male chest reconstruction surgery for D.H. and John." ER 475; see also Plaintiffs' Proposed Order Granting Plaintiffs' Motion for Preliminary Injunction, which states: "IT IS FURTHER ORDERED THAT: (1) Defendants shall be immediately enjoined from further enforcement of Ariz. Admin Code R9-22-205(B)(4)(A) … (2) [AHCCCS] shall provide coverage for Plaintiff's male chest reconstruction surgeries, consistent with all other requirements of federal law." ER 473.

Plaintiffs' proposed injunction seeks to enjoin enforcement of a regulation that has been in place in Arizona since 1982 and to force AHCCCS to pay for a procedure it has never authorized before – including for these particular Plaintiffs who are adolescents. Thus, Plaintiffs do not seek to maintain the status quo while the Court considers the merits of the claim – they seek an injunction that orders Defendant to take affirmative action to cover, on an ongoing basis, an excluded medical procedure with questionable safety and effectiveness for children and adolescents (and even before the Plaintiffs provide Defendant with any opportunity to review medical records allegedly demonstrating medical necessity in their own

13

cases).  Therefore, the District Court properly determined that the injunction

sought here is a mandatory one, subject to higher scrutiny.

In their Opening Brief, Plaintiffs assert that the prohibitory injunction

standard should apply because they merely seek to "ensure that when D.H. and

John request prior authorization for coverage for male chest reconstruction surgery,

AHCCCS evaluates those requests as it does requests for other Medicaid services."

OB at 24.  But this is a complete misrepresentation of the relief sought and

contrary to the position Plaintiffs asserted in their Motion for Preliminary

Injunction and their proposed order granting the same.  And critically, in this

appeal, Plaintiffs ask this Court to "direct[] entry of the requested preliminary

injunction."  OB at 6.

Plaintiffs do not, because they cannot, cite a single case with facts similar to

those presented here and where a court held an injunction was prohibitory, and not

mandatory.[3]  Additionally, Plaintiffs fail to address the caselaw relied upon by the

District Court in holding that the injunction sought here is a mandatory one.  *See*

---

[3] Plaintiffs cite *Hernandez v. Sessions*, 872 F.3d 976 (2017) and *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399 (1993) but both of these cases held the mandatory injunction standard applied.  Although the plaintiffs in those cases satisfied their burdens to obtain preliminary injunctions, they are distinguishable from the facts here. *Hernandez* involved unlawful detention on the basis of poverty alone, which was a violation of the Due Process Clause.  *Dahl* did not allege a constitutional violation – it was a breach of contract claim where plaintiffs sought continuation of treatment with an FDA clinical drug, which was promised as part of a contract.

*Heckler*, 463 U.S. 1328 (injunction directing the Secretary of Health and Human Services to pay benefits to individuals under the "Grandfather Clause" of the Social Security Act was mandatory, and a heightened standard applied); *Katie A. ex rel. Ludin v. L.A. Cnty.*, 481 F.3d 1150 (9th Cir. 2007) (heightened, mandatory standard applied where injunction sought an order requiring the state to provide mental health services to class of children).

### III. PLAINTIFFS FAILURE TO APPEAL THE DISTRICT COURT'S DECISION REGARDING THEIR MEDICAID ACT CLAIMS IS FATAL TO THEIR REQUEST FOR A PRELIMINARY INJUNCTION ON APPEAL

Plaintiffs only appeal the District Court's decision on their Equal Protection Claims. OB at p. 6. Plaintiffs do not appeal the denial of their claims under the Medicaid Act. The District Court denied the preliminary injunction under the Medicaid Act because, on the facts presented, Plaintiffs had not proven they were likely to succeed because there was doubt regarding whether chest reconstruction surgery is a safe and effective treatment for gender dysphoria in adolescents, and whether it was medically necessary for them. ER 9-16. Because of these findings (which will not be disturbed unless clearly erroneous[4]), and the Medicaid Act's *express* limitation to "necessary health care" (29 U.S.C. § 1396(r)(5); *Katie A.,* 431 F.3d at 1156), Plaintiffs apparently decided that such an appeal would be fruitless.

---

[4] *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020).

But because Plaintiffs did not appeal the District Court's decision on the Medicaid Act claims, they cannot challenge on appeal the factual findings the District Court made in denying those claims. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 334 (2002) (recovery under a *Penn Central* analysis was foreclosed in part because petitioners did not appeal from the district court's conclusion that the evidence would not support it). Thus, the District Court's factual determinations that Plaintiffs failed to show chest reconstruction surgery is a safe and effective treatment for gender dysphoria for adolescents, and medically necessary for them, are simply not subject to review by this Court.

Plaintiffs' tactical decision to not appeal the District Court's decision on the Medicaid Act is also fatal to Plaintiffs' Equal Protection Claims because if Plaintiffs are not entitled to coverage of Medicaid benefits, they cannot claim that Defendant unconstitutionally or unlawfully denied them those benefits. Nothing in the Equal Protection Clause or Section 1557 requires AHCCCS to pay for chest reconstruction surgery – for anyone. That requirement exists only if it is a covered benefit under Medicaid. Thus, Plaintiffs' failure to appeal the District Court's determination under the Medicaid Act necessarily precludes any claim that Defendant violated their rights under the Equal Protection Clause or Section 1557.[5]

---

[5] The decision not to appeal entitlement to benefits under the Medicaid Act also

## IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING PLAINTIFFS FAILED TO PROVE THEY WERE LIKELY TO SUCCEED ON THE MERITS OF THE EQUAL PROTECTION CLAIMS

The District Court determined that Plaintiffs failed to clearly show they are likely to succeed on the merits of their claims because they did not show surgery is medically necessary for them, that it is safe and effective treatment for gender dysphoria in adolescents, or that AHCCCS's decision to not cover gender reassignment surgery violates the Medicaid Act, the Equal Protection Clause or Section 1557.  ER 8-9.  The District Court applied the correct legal standard and, even if Plaintiffs had not waived any objections to the District Court's factual findings by failing to appeal them, those findings could not be overturned on appeal because they are not clearly erroneous.

### a.  Elements of the Equal Protection Act Claims[6]

Plaintiffs do not dispute that the District Court correctly described the elements of their Equal Protection Claims as follows: "(1) AHCCCS is federally funded; (2) Plaintiffs were denied benefits of or otherwise discriminated against by AHCCCS on the basis of their membership in a protected class—here, on the basis

---

leaves Plaintiffs no ability to demand the relief sought in their preliminary injunction (to enjoin enforcement of the Rule and to order AHCCCS to cover the surgery).

[6] The District Court appropriately addressed the Section 1557 and the Equal Protection Clause claims together (ER 16-19) because they require the same proof. Defendant will do the same here.

of their sex; and (3) the denial of benefits or discrimination was a but-for cause of Plaintiffs' injuries. See 42 U.S.C. § 18116(a)."  ER 17, 484-5.

### b.  Plaintiffs Cannot Prove They Were Denied Benefits to Which They Were Entitled

To prove they have been "denied benefits" on the basis of sex, Plaintiffs must first prove entitlement to the benefits they were denied.  That entitlement arises only under the Medicaid Act, and then only if Plaintiffs prove the desired benefit is a safe and effective treatment of gender dysphoria and medically necessary for them.  As noted in Section III *infra*, by failing to appeal the District Court's factual and legal determinations under the Medicaid Act claims, Plaintiffs have waived any claim on appeal that they are entitled to the Medicaid benefits they seek and therefore, Plaintiffs' Equal Protection Claims fail in turn.  But even if Plaintiffs had not waived this claim, the District Court's determination that they have not clearly shown they are entitled to the Medicaid benefits they seek could not be overturned because it was not clearly erroneous.

It is beyond dispute that AHCCCS may lawfully decide to provide some services and not others.  Given its limited budget, and the requirement to provide necessary medical care to all who are eligible, AHCCCS must place limits on coverage and carefully differentiate between what is necessary and what is requested.  *See Beal v. Doe,* 432 U.S. 438 (1977) (Medicaid Act "confers broad discretion on the States to adopt standards for determining the extent of medical

assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act.").  As noted by the District Court, AHCCCS is required by statute to "'safeguard against unnecessary utilization of such care and services to assure that payments are consistent with efficiency, economy and quality of care….' 42 U.S.C. § 1396a(A)(30)(A)."  ER 10.  Thus, AHCCCS lawfully chooses not to fund services that are not proven to be safe and effective, or for which there is no proven health benefit (cosmetic surgery, for example).  And these decisions are not suspect just because they bear some relationship to a protected class such as sex.

The District Court noted that although WPATH claims gender reassignment surgery is the standard of care for adolescents with gender dysphoria, Defendant called this into doubt by providing declarations from two experts who opined that the WPATH standard is flawed and unsupported by any high-quality scientific studies.  ER 12.  The District Court further noted that the opinions of Defendant's experts are bolstered by a 2016 final decision from the Centers for Medicare & Medical Services, which declined to issue a National Coverage Determination on gender reassignment surgery for Medicare beneficiaries with gender dysphoria "because the clinical evidence is inconclusive for the Medicare population."  ER 13.

The District Court also concluded that there was doubt as to Plaintiffs' likelihood of success based on Dr. Laidlaw's opinion that irreversible male chest reconstruction surgery should not be performed on Plaintiffs because there is no objective testing that can be utilized to predict whether these two adolescents will outgrow their gender dysphoria if left untreated. ER 13. And Dr. Laidlaw opined that such surgery is inappropriate for young people because their brains are still developing, and they lack the "intellect, emotion, judgment and self-control" to make such a significant, irreversible decision. ER 13.

In finding Plaintiffs failed to clearly show they were likely to succeed, the District Court also noted that Dr. Levine offered similar evidence and opined that gender reassignment surgery is "expensive" and "fraught with complications." ER 14. Dr. Levine supported his opinions by reference to "several studies that indicate mental health outcomes do not significantly improve for transgender individuals who undergo surgery." ER 14. Finally, the District Court took notice of a recent opinion from the United Kingdom's High Court of Justice, which found that even the practice of prescribing puberty-suppressing medications to children under age 18 was "experimental or innovative in the sense that there are currently limited studies/evidence of efficacy or long-term effects of the treatment." ER 15.

Plaintiffs may disagree with these facts and opinions, but they cannot credibly claim the District Court abused its discretion in finding that the evidence

presented by Defendant made Plaintiffs' claims that they are entitled to chest reconstruction surgery under the Medicaid Act "doubtful."  In the absence of any entitlement to benefits under Medicaid, Plaintiffs cannot prove an unlawful denial of benefits – therefore, their Equal Protection Claims fail.

### c. Plaintiffs Cannot Prove AHCCCS Discriminates Against Transgender People

Importantly, AHCCCS's decision not to fund gender reassignment surgery is a limitation based on a procedure, not a protected characteristic.  AHCCCS offers services to gender dysphoric individuals in the form of counseling, psychotherapy, and medications – the same services offered to all other individuals suffering from other mental health issues.  Ariz. Admin. Code R9-22-205.  This case is fundamentally different, therefore, than the cases Plaintiffs rely upon, where a state denied all services to adults with gender dysphoria.  *Boyden v. Conlin*, 341 F. Supp. 3d 979, 994-98 (W.D. Wis. 2018); *Flack v. Wis. Dep't of Health Servs.*, 331 F.R.D. 361, 366-68 (W.D. Wis. 2019) ("Flack I"); *Kadel v. Folwell*, 446 F. Supp. 3d 1, 12-13, 17-18 (M.D.N.C. 2020); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1026-28 (D. Alaska 2020).

The Court also determined that Plaintiffs have not clearly shown a likelihood of success on their claim of discrimination because the Rule does not treat similarly situated people differently.  In their Motion for Preliminary Injunction, Plaintiffs argued that because AHCCCS pays for breast reconstruction after a

mastectomy, it should be required to pay for mastectomies for gender dysphoric adolescents.[7]  But the reconstruction of breast tissue after the removal of diseased tissue to treat cancer (or another malady) is a much different situation.  In that case, AHCCCS is funding the removal of tissue that threatens life and replacing it with a safe alternative, which has been scientifically proven effective.  What Plaintiffs seek is the removal of healthy tissue in a procedure with questionable effectiveness for children and adolescents.  As the District Court noted, "Plaintiffs have not clearly shown the needs of adolescent transgender boys seeking this surgery are comparable to the needs of other patients who require such surgery, such as adult women with breast cancer."  ER16

A more apt comparison would be for Plaintiffs to show that AHCCCS has provided coverage for procedures that have not proven to be medically necessary or safe and effective treatment for cisgender adolescents.  But Plaintiffs do not, because they cannot, show that AHCCCS has paid for procedures that have not been proven to be medically necessary or safe and effective for cisgender adolescents (or anyone else, for that matter).  Thus, Plaintiffs have not

---

[7] Without any reference to the record, on appeal Plaintiffs attempt to use the treatment of gynecomastia to demonstrate how AHCCCS discriminates.  But there is no evidence in the record related to how AHCCCS treats this medical condition – which is an overdevelopment or enlargement of the breast tissue in men or boys.

demonstrated that AHCCCS treated them differently *because of* their transgender status.

On appeal, Plaintiffs argue that the denial of this surgery is discrimination as a matter of law, and that they had no need to prove anything "beyond the terms of the exclusion itself." OB at 15. In support of this remarkable claim, Plaintiffs cite the same cases the District Court considered and found "unavailing." As the District Court noted, *Bostock v. Clayton Cnty., Ga.,* 140 S.Ct 1731 (2020) does "not involve or purport to deal with a state Medicaid plan exclusion for surgical treatment for gender dysphoria in minors." ER 18. Indeed, the *Bostock* Court was careful to limit its decision to intentional discrimination under Title VII and "not prejudge" other laws.[8] *Bostock*, 140 S.Ct. at 1753. The District Court's legal analysis is not erroneous – *Bostock* is distinguishable.[9] *Kadel* is not applicable

---

[8] In *Bostock*, there was no dispute that the employees were fired for being homosexual or transgender. 140 S.Ct. at 1744. Here, Defendant strongly contests that the failure to provide Medicaid coverage for the surgery is because of transgender status, and its position is supported by the fact that it covers other services to transgender people with gender dysphoria.

[9] Pursuant to *Bostock*, taking an adverse employment action against an employee because of that person's gender identity or sexual orientation falls within Title VII's prohibition of employment discrimination "based on sex." 140 S. Ct. at 1746-47. But that situation is vastly different than the one here – where AHCCCS provides some benefits to transgender persons with gender dysphoria, but excludes others. Even if *Bostock* is extended beyond Title VII to provide transgender people with discrimination claims "because of sex" in other contexts (which is yet to be decided), the Rule applied by AHCCCS here does not deny transgender people benefits based on their status, as set forth above.

because it did not involve Medicaid coverage for minor plaintiffs and it involved a total ban on all treatment. The *Kadel* plaintiffs sought to invalidate a state-sponsored private health plan's exclusion of all treatment sought "in conjunction with proposed gender transformation" or "in connection with sex changes or modification." 446 F. Supp. 3d at 7. *Boyden* is similarly inapplicable because it did not involve Medicaid or minor plaintiffs, the healthcare plan was offered to state employees, and the challenged exclusion was significantly broader than the AHCCCS exclusion here. The adult plaintiffs in *Boyden* sought to invalidate a state sponsored private health plan's exclusion of "procedures, services, and supplies related to surgery and sex hormones associated with gender reassignment." 341 F. Supp. 3d at 982. And in *Flack*, the defendants did not challenge the issue of medical necessity, as Defendant has done here, but argued only that Wisconsin should be immune because it could not have anticipated changes in federal law. *Flack v. Wisc. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1013 ("Flack II"). And again, the *Flack* exclusion was far broader than that at issue here; in *Flack*, the exclusion applied to all "[d]rugs, including hormone therapy, associated with transsexual surgery or medically unnecessary alteration of sexual anatomy or characteristics" as well as any surgical procedure intended to treat gender dysphoria. *Id.* at 1007. Here, AHCCCS provides counseling, psychotherapy and medication to treat gender dysphoria – demonstrating that

AHCCCS's decision is not based on a protected characteristic. For these reasons, the District Court appropriately held that these cases were distinguishable and not binding precedent here.

Plaintiffs' argument also runs afoul of the basic principle that a plaintiff must have standing to assert a claim – meaning Plaintiffs must have suffered an "injury in fact" that is "concrete and particularized," not just "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In support of their argument, Plaintiffs claim *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) exempts them from the burden of proving injury in fact. But the *Associated General Contractors* case did not create a special subset of cases where injury need not be proved – instead it held: "'The injury in fact' in an equal protection case of this variety is the denial of *equal treatment* resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Associated Gen. Contractors*, 508 U.S. at 666 (emphasis added). Thus, even under *Associated General Contractors,* Plaintiffs would need to prove they were denied "equal treatment." As set forth above, Plaintiffs have not met this burden, particularly the heightened standard for a preliminary injunction.

Finally, it must be noted that although the Medicaid Act expressly identifies several medical services that participating states must provide (42 U.S.C. §

1396d(a)) it does not identify gender reassignment surgery as a required service. Moreover, no court in the United States has determined that adolescents or minors are entitled to gender reassignment surgery under Medicaid. In these circumstances, it cannot be said the District Court abused its discretion in finding "doubtful" Plaintiffs' claim that the law requires AHCCCS to provide gender reassignment surgery to adolescents, particularly in the absence of proven efficacy and medical necessity.

### d. The District Court's Decision on the Equal Protection Clause Claim Passes Constitutional Scrutiny

Plaintiffs claim the Court erred by holding that the Equal Protection Clause does not require heightened scrutiny of government policies that discriminate against transgender people. OB at 2. But this claim finds no support in the record.

As noted above, AHCCCS' decision not to fund gender reassignment surgery does not discriminate against a protected class (hence, rational basis scrutiny applies), but even if it did, that decision is substantially related to an important governmental interest. The District Court did not abuse its discretion when it found that AHCCCS has a statutory mandate to ensure "efficiency, economy and quality of care" in the provision of Medicaid services. ER 8. That important governmental interest is directly and substantially promoted through a limitation on surgery, the effectiveness and quality of which is subject to legitimate

scientific debate and that the Court determined may not be safe and effective treatment for adolescents like the Plaintiffs here.

As previously noted, the AHCCCS Rule is a limitation on a procedure, not a protected characteristic or protected class. Indeed, AHCCCS does not preclude all services to transgender people. AHCCCS' decision not to fund the procedure Plaintiffs seek is not discrimination against a class, but a referendum on the medical necessity, safety, and effectiveness of the procedure for adolescents like the Plaintiffs here. In *Maher v. Roe*, 432 U.S. 464, 479 (1977), a woman on welfare brought an Equal Protection claim. The Supreme Court refused to require Connecticut to pay for the woman's nontherapeutic abortion even though Connecticut paid for other expenses associated with pregnancy and childbirth. The Court noted, "[o]ur cases uniformly have accorded the States a wider latitude in choosing among competing demands for limited public funds." *Maher*, 432 U.S. at 479. The same rationale should apply here, where AHCCCS has provided a legitimate interest in its decision. AHCCCS must "safeguard against unnecessary utilization of such care and services to assure that payments are consistent with efficiency, economy and quality of care…." 42 U.S.C. § 1396a(A)(30)(A). AHCCCS precludes procedures that have not been proven medically necessary, safe, and effective – and it precludes those type of procedures for all people. In the absence of legislation to the contrary, AHCCCS is entitled to make that decision.

But even if the Rule were subject to intermittent scrutiny, as Plaintiffs contend (OB at 17), the District Court did not err in denying the preliminary injunction. In the Equal Protection context, government classification related to gender passes intermediate scrutiny if it is "substantially related to a sufficiently important governmental interest" and Defendant clearly satisfied this test. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 441 (1985). Defendant presented declarations from two experts that the District Court found "well qualified" who opined that the requested surgeries were not a safe and effective treatment for gender dysphoria, nor medically necessary for these Plaintiffs. Those experts also credibly called into question the standards of care relied upon by Plaintiffs. Defendant also pointed the District Court to a recent decision from United Kingdom's High Court of Justice, which reviewed the practice of prescribing puberty-suppressing medication to children under age 18 with gender dysphoria, *Bell v. Tavistock & Portman NHS Foundation Trust*, 2020 EWHC 3274 (Dec. 1, 2020). ER 81-118. Much like Plaintiffs here, Tavistock argued the practice of prescribing puberty-suppressing medication to children under age 18 was "required in accordance with the international frameworks of WPATH and the Endocrine Society and by the domestic regulatory frameworks." ER 81-118 ¶ 97. The UK court disagreed and held: "it is right to call the treatment experimental or innovative in the sense that there are currently limited studies/evidence of the

efficacy or long-term effects of the treatment." ER 81-118 ¶ 148. This, and the other evidence Defendant presented caused the District Court to conclude that Plaintiffs could not prove, at the preliminary injunction stage, that the procedure they seek is medically necessary, safe, or effective for them.

Plaintiffs point to *Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019), cert. denied sub nom., 141 S. Ct. 610 (2020), for the proposition that this Court has already adopted the WPATH standards of care. OB at 19. But critically, the *Edmo* defendants did not challenge the standards of care. *Id.* at 767.[10] Moreover, *Edmo* is entirely distinguishable from this case. Edmo was an adult in the custody of the Idaho Department of Corrections. After "four months of intensive discovery and a three-day evidentiary hearing" the district court concluded that gender conforming surgery was medically necessary for Edmo. We have the opposite situation here. The District Court reviewed the evidence presented and concluded, "[b]ased on the record and, in particular, the conflicting opinions provided by well-qualified experts and the lack of any evidence showing Plaintiffs have been evaluated by a psychologist or psychiatrist, the Court finds Plaintiffs have not clearly shown the surgery is medically necessary for them or that it is safe and effective for

---

[10] Importantly, like the District Court here, other courts have questioned the WPATH standards of care. *See, e.g.*, *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) ("[T]he WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested medical debate….").

correcting or ameliorating their gender dysphoria." ER 15. Plaintiffs did not appeal this determination – so it is beyond dispute and review.

As the District Court noted, federal law requires AHCCCS to utilize its limited resources to "'safeguard against unnecessary utilization of such care and services to assure that payments are consistent with efficiency, economy and quality of care….' 42 U.S.C. § 1396a(A)(30)(A)." (Opinion at 8). Certainly, a decision not to fund treatments that have not been proven medically necessary or safe and effective is substantially related to this important governmental interest.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING PLAINTIFFS FAILED TO CLEARLY DEMONSTRATE THEY WERE LIKELY TO SUFFER IRREPARABLE HARM

In satisfying the second element of the burden of proof for a preliminary injunction – that he or she is likely to suffer irreparable harm in the absence of preliminary relief – a plaintiff must show more than a mere "possibility" of irreparable harm. *Winter*, 555 U.S. at 22. He or she must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original). The mere possibility of future injury, or a conjectural or hypothetical injury is not sufficient to obtain a preliminary injunction. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). Additionally, in mandatory injunctions such as the one here, plaintiffs must show

"extreme or very serious damage will result" that is not "capable of compensation in damages." *Hernandez*, 872 at 999 (quoting *Maryln*, 571 F.3d at 879).

Plaintiffs' main argument for irreparable harm focuses on the possibility they may harm themselves, either through their continued use of restrictive clothing to hide their breasts, or suicide. OB at 25. But while the District Court did not rule out the *possibility* that Plaintiffs' mental health could have been damaged, it found Plaintiffs failed to meet their heightened burden for a preliminary injunction. ER 20-21. The Court reached this conclusion based on the evidence presented by Defendant that the DSM V states that gender dysphoria does not persist into adulthood for most children, and Plaintiffs have not demonstrated they are capable of providing informed consent given their significant other (non-gender dysphoria) psychological disorders. ER 20. Additionally, Defendant presented evidence that despite the fact that D.H. has worn restrictive clothing for 5 years, he had not developed any skin conditions or exacerbated his asthma, so irreparable harm was unlikely. *Id*. With respect to John Doe, Plaintiffs failed to provide any evidence from any treating medical doctor. *Id*.

Plaintiffs cite cases for the proposition that the delay or denial of "needed medical" care is irreparable harm. *Id.* But again, Plaintiffs failed to clearly demonstrate they were likely to succeed on the claim that this procedure was medically necessary for them (or that it is safe and effective treatment for

adolescents), and they have abandoned that claim on appeal. Moreover, as set forth above, the District Court's determination in making these findings was not clearly erroneous.

Plaintiffs argue that a deprivation of constitutional rights is irreparable harm. But as noted above, neither the Constitution nor Section 1557 entitles Plaintiffs to the relief they seek in the absence of a claim under the Medicaid Act. Having failed to appeal the coverage issue, Plaintiffs cannot argue that their constitutional rights have been violated. In addition, as the District Court noted, the Plaintiffs have not presented clear evidence to demonstrate they are likely to succeed on their constitutional claim, so they are not relieved of their burden to prove irreparable harm.

Plaintiffs also take issue with the District Court's finding that there is no irreparable harm here because Plaintiffs could have the surgery, and then sue for money damages. ER 20-21. *See Toomey v. State of Arizona, et al.*, No. CV-19-00035-TUC-RM, Doc. 162. Plaintiffs cannot dispute this fact, claiming only that Plaintiffs cannot afford it. However, there are other ways to raise funds to proceed with the surgery if it is truly needed now. Indeed, the cost of surgery for these children is presumably modest in comparison to the cost of litigating this case. As the District Court expressed during oral argument, its concern was with the safety

and wellbeing of the minor Plaintiffs and, under the facts of this case, there was sufficient doubt to issue a preliminary injunction ordering this surgery.

## VI. PLAINTIFFS' REQUESTED RELIEF IS IDENTICAL TO THE ULTIMATE RELIEF REQUESTED

Plaintiffs argue that the relief requested in the preliminary injunction is narrower than the relief requested in their Complaint because it is limited to D.H. and John. OB at 40. Not so. As noted above, the preliminary injunction asks that AHCCCS be "immediately enjoined from further enforcement of Ariz. Admin Code R9-22-205(B)(4)(A) …" (Doc 3-1) Such an injunction would allow anyone on AHCCCS, regardless of age, to seek and obtain gender reassignment surgery. Moreover, as noted by the District Court, the injunction sought here goes far beyond the reach of achieving "status quo ante litem pending a determination of the action on the merits." ER 21, citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). Here, the requested relief would completely change the status quo and achieve the very relief sought in the Complaint – to deny AHCCCS the ability to apply the Rule for any future claim, and to force it to cover the surgeries for D.H. and John. Indeed, if the Court ordered this injunctive relief, there would be no class needed and nothing remaining to litigate. For these reasons, the District Court did not abuse its discretion when it determined that a preliminary injunction was inappropriate because the relief sought was the same as the ultimate relief requested.

## CONCLUSION

In seeking a preliminary injunction, Plaintiffs had an obligation to present clear evidence that they were likely to prevail on their claims and they would suffer irreparable harm if they did not receive injunctive relief.[11]  They failed to do so and they cannot demonstrate that the District Court abused its discretion by applying an erroneous legal standard or making clearly erroneous findings of fact such that its application of the legal standard was "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Hinkson*, 585 F.3d at 1262; *Earth Island Inst.*, 626 F.3d at 468.  This is especially true when applying the heightened standard for mandatory injunctions, where Plaintiffs were required to make a clear showing that extreme or very serious damage would result absent injunctive relief and that the merits of the case are not "doubtful."

---

[11] The District Court found that Plaintiffs did not satisfy their burden of proving likelihood of success on the merits or irreparable harm.  It also held it was premature to grant the relief sought in the preliminary injunction, and therefore it need not address the remaining *Winter* factors.  ER 21.  On appeal, Plaintiffs do not claim the failure to address these factors was error.  Rather, they simply argue that, if applied, they would succeed on these factors. OB at 27.  Plaintiffs' argument on these factors hinges entirely on the assumptions that the procedure is medically necessary, and they suffered irreparable harm.  But, as carefully analyzed by the District Court, Plaintiffs failed to make these showings.  And as set forth above, the District Court did not abuse its discretion in reaching these conclusions.

June 30, 2021.

**BURNSBARTON PLC**


/s/ Kathryn Hackett King
Kathryn Hackett King
David T. Barton

JOHNSTON LAW OFFICES, P.L.C.
Logan T. Johnston
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022

*Attorneys for Defendant-Appellee*

## STATEMENT OF RELATED CASES

Jami Snyder is unaware of any other cases before the Ninth Circuit that are related to this appeal.

June 30, 2021.

**BURNSBARTON PLC**

*/s/* Kathryn Hackett King
Kathryn Hackett King
David T. Barton

JOHNSTON LAW OFFICES, P.L.C.
Logan T. Johnston
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

June 30, 2021.

BURNSBARTON PLC

*/s/* Kathryn Hackett King
Kathryn Hackett King
David T. Barton

JOHNSTON LAW OFFICES, P.L.C.
Logan T. Johnston
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022

*Attorneys for Defendant-Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-15668

I am the attorney or self-represented party.

**This brief contains** | 8,164 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [              ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Kathryn Hackett King | **Date** | 06/30/2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/2018*