No. 21-15668

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

D.H., by and through his mother, Janice Hennessy-Waller; and JOHN DOE, by his
guardian and next friend, Susan Doe,
Plaintiff-Appellants,

vs.

JAMI SNYDER,
Defendant-Appellee.

On Appeal from Order of the United States District Court
For the District of Arizona
Case No. 4:20-cv-335-SHR

**PLAINTIFF-APPELLANTS' REPLY BRIEF**

Asaf Orr (CA SBN: 261650)
Shannon Minter (CA SBN: 168907)
Christopher Stoll (CA SBN: 179046)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
T: +1 415 392 6257
F: +1 415 392 8442
Email:      aorr@nclrights.org
            sminter@nclrights.org
            cstoll@nclrights.org

Brent P. Ray (IL SBN: 6291911)
King & Spalding LLP
110 N. Wacker Drive, Suite 3800
Chicago, Illinois 60606
T: +1 312 995 6333
F: +1 312 995 6330
Email:      bray@kslaw.com

(Counsel continued on next page)

Counsel continued from previous page:

Daniel C. Barr (AZ SBN: 010149)
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email:      dbarr@perkinscoie.com

Abigail K. Coursolle (CA SBN: 266646)
National Health Law Program
3701 Wilshire Boulevard, Suite 750
Los Angeles, CA 90010
T: +1 310 204 6010
Email:      coursolle@healthlaw.org

Attorneys for Plaintiff-Appellants, D.H. and JOHN DOE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................2

I.  Plaintiffs Seek an injunction preventing Defendant from enforcing Arizona's categorical exclusion of "gender reassignment surgeries." .......................................................2

II.  AHCCCS's exclusion discriminates against transgender people based on sex in violation of the Affordable Care Act and Equal Protection Clause ..............................................................7

    A.  Categorically excluding coverage for "gender reassignment surgeries" constitutes discrimination based on sex in violation of Section 1557. .......................................11

    B.  Defendant failed to provide an "exceedingly persuasive justification" for categorically excluding male chest reconstruction surgeries. ............................................17

III.  D.H. and John Doe established that denial of the requested injunction would result in irreparable harm. .......................................23

IV.  The balance-of-equities and public-interest factors tip sharply in favor of D.H. and John Doe. ............................................25

V.  The injunction sought by D.H. and John Doe is more limited than the ultimate relief sought in their complaint. .......................................26

CONCLUSION ...................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.B. v. Tavistock*,
[2021] EWHC 741 (Fam). .................................................................22

*Adams v. Sch. Bd. of St. John's Cnty., Fla.*,
--- F.4th ---, 2021 WL 2944396 (11th Cir. Jul. 14, 2021) ..................17

*Bell v. Tavistock*,
[2020] EWHC 3274 (Admin). ...........................................................21

*Beltran v. Myers*,
677 F.2d 1317 (9th Cir. 1982) ...........................................................25

*Bostock v. Clayton County, Georgia*,
140 S. Ct. 1731 (2020)...............................................8, 12, 13, 14, 15

*Boyden v. Conlin*,
341 F. Supp. 3d 979 (W.D. Wis. 2018) ..................................13, 16, 17

*Bras v. Cal. Pub. Util. Comm'n*,
59 F.3d 869 (9th Cir. 1995) .................................................................4

*C.P. v Blue Cross Shield of Illinois*,
Case No. 3:20-cv-06145, 2021 WL 1758896 (W.D. Wash. May 4,
2021) ....................................................................................................8

*City of L.A., Dep't of Water & Power v. Manhart*,
435 U.S. 702 (1978)...........................................................................14

*Cole v. Oravec*,
700 F. App'x 602 (9th Cir. 2017) ........................................................4

*Corbitt v. Taylor*,
--- F. Supp. 3d ---, 2021 WL 142282 (M.D. Ala. Jan. 15, 2021) .......18

*Dahl v. HEM Pharm., Corp.*,
7 F.3d 1399 (9th Cir. 1993) ...............................................................24

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) ...........................................................22

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019),
*cert. den.*, 141 S. Ct. 610 (2020).....................................3, 9, 19, 20, 21

*Flack v. Wis. Dep't of Health Srvcs.*,
328 F. Supp. 3d 931 (W.D. Wis. 2018)...........................................12, 13, 16, 17

*Flack v. Wis. Dep't of Health Servs.*,
331 F.R.D. 361 (W.D. Wis. 2019)......................................................16

*Flack v. Wis. Dep't of Health Srvcs.*,
395 F. Supp. 3d 1001 (W.D. Wis. 2019)......................................18, 22

*Fletcher v. Alaska*,
443 F. Supp.3d 1024 (D. Alaska 2020) ......................................12, 16

*Gibson v. Collier*,
920 F.3d 212 (5th Cir. 2019) ...........................................................20

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011) ..........................................................8

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ........................................................8, 18

*Harrison v. Kernan*,
971 F.3d 1069 (9th Cir. 2020) ............................................................4

*Heckler v. Lopez*,
463 U.S. 1328 (1983)........................................................................23

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) ...........................................................23

*Hibbs v. Dep't of Hum. Res.*,
273 F.3d 844 (9th Cir. 2001), *aff'd,* 538 U.S. 721 (2003).................11

*Jeldness v. Pearce*,
30 F.3d 1220 (9th Cir. 1994) ...........................................................15

*Kadel v. Folwell*,
446 F. Supp. 3d 1 (M.D.N.C. 2020) .......................................................13, 16, 17

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ............................................................8, 10, 12, 17

*Kastl v. Maricopa Cmty. Coll. Dist.*,
325 Fed. App'x 492 (9th Cir. 2009) .............................................................8, 12

*Katie A. v. Los Angeles County*,
481 F.3d 1150 (9th Cir. 2007) ..........................................................................23

*M.R. v. Dreyfus*,
697 F.3d 706 (9th Cir. 2012) .............................................................................25

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .............................................................................24

*Ne. Fla. Ch. of Assoc. Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)............................................................................................4, 5

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) .............................................................................25

*Schwenk v. Hartford*,
204 F.3d 1187 (9th Cir. 2000) .............................................................................8

*Smith v. City of Salem*,
378 F.3d 566 (6th Cir. 2004) ........................................................................8, 18

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
535 U.S. 302 (2002).............................................................................................11

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) ..........................................................................................4

*Turner v. Fouche*,
396 U.S. 346 (1970)...............................................................................................4

*United States v. Virginia*,
518 U.S. 515 (1996)...............................................................................9, 10, 17, 18

*Walker v. Azar*,
  480 F. Supp. 3d 417 (E.D.N.Y. 2020) .................................................................8

*Whitaker v. Kenosha Unified Sch. Dist. No. 1*,
  858 F. 3d 1034 (7th Cir. 2017) .................................................................8, 18

**Statutes**

42 U.S.C. § 18116(a) .................................................................15, 16

**Regulations**

Arizona Administrative Code R9-22-205(B)(4)(a) ...................................................3

**Other Authorities**

Brief for Pediatric Endocrine Society, et al. as Amicus Curiae in
  Support of Plaintiffs-Appellants and Reversal,
  *D.H. v. Snyder*, No. 21-15668 (9th Cir. filed May 21, 2021) ............................3

Complaint, *Kadel v. Folwell*, Case No. 19-CV-272 (M.D.N.C. filed
  Mar. 11, 2019) .................................................................16

U.S. Dep't of Health & Human Srvcs., Notification of Interpretation
  and Enforcement of Section 1557 of the Affordable Care Act and
  Title IX of the Education Amendments of 1972 (2021) .................................................8

U.S. Dep't of Justice, Application of *Bostock v. Clayton County* to
  Title IX of the Education Amendments of 1972 (2021) .................................................8

**INTRODUCTION**

Each of Defendant's arguments rests on a misreading of the record and the relevant caselaw. D.H. and John Doe are two transgender teenagers who challenge AHCCCS's categorical exclusion for "gender reassignment surgeries." Because of that exclusion, AHCCCS refuses to consider whether male chest reconstruction surgery is medically necessary for D.H. and John, an assessment AHCCCS would have done if they sought any treatment unrelated to their transgender status. By singling out "gender reassignment surgeries," AHCCCS discriminates against D.H. and John based on their transgender status and sex in violation of Section 1557 of the Affordable Care Act and the Equal Protection Clause. The injunction Plaintiffs seek is narrowly focused on preventing that concrete and immediate harm.

AHCCCS disregards precedent from this Circuit and other federal courts holding that discrimination against transgender people violates federal anti-discrimination laws. As a result, AHCCCS fails to acknowledge that the arguments it raises have been explicitly rejected by cases interpreting those laws, including Section 1557 and the Equal Protection Clause. Under that precedent, Plaintiffs are likely to succeed on the merits of their sex discrimination claims, and the District Court erred in holding otherwise. Those errors warrant reversal and entry of the requested injunction to prohibit AHCCCS from enforcing its categorical exclusion of "gender reassignment surgeries" when considering D.H.'s and John's requests for

male chest reconstruction surgery.

## ARGUMENT

**I.**   **Plaintiffs Seek an injunction preventing Defendant from enforcing Arizona's categorical exclusion of "gender reassignment surgeries."**

AHCCCS erroneously argues that Plaintiffs must prove that the surgical services they seek are medically necessary for them in order to pursue their anti-discrimination claims. Defendant-Appellee's Answering Brief, Dkt. 19, at 18 ("Ans. Br.") (contending that "[t]o prove they have been 'denied benefits' on the basis of sex, Plaintiffs must first prove entitlement to the benefits they were denied"). That argument fundamentally misunderstands the nature of the claims before this Court and the elements necessary to establish each.

AHCCCS's opposition relies almost wholly on mischaracterizing the relief Plaintiffs seek. To be clear, Plaintiffs seek an order preventing AHCCCS from enforcing its categorical exclusion of coverage for "gender reassignment surgeries." That exclusion currently bars Plaintiffs from being assessed for such surgeries, as recommended by their health care providers. Both here and in the District Court below, Plaintiffs seek to be treated equally, without discrimination based on their sex and transgender status, and thus to have an opportunity to undergo an individualized assessment to determine whether they require male chest reconstruction surgery, as would happen for any other procedure recommended by

their health care providers. Instead, because they are transgender, Arizona's categorical exclusion bars any individualized assessment and blocks them even from being evaluated for surgical treatment their providers have recommended as medically necessary care.

Plaintiffs' complaint challenges the categorical exclusion of "gender reassignment surgeries" contained in Arizona Administrative Code R9-22-205(B)(4)(a). Plaintiffs challenge that exclusion, on its face, as a violation of Section 1557 and the Equal Protection Clause because it categorically bars coverage of surgeries required only by transgender beneficiaries, when coverage for the same or similar surgeries is available when required by non-transgender beneficiaries. AHCCCS's continued enforcement of the exclusion contravenes the well-established standards of care and broad medical consensus that gender reassignment surgery, including male chest reconstruction surgery, is medically necessary care for many transgender people. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019), *cert. den.*, 141 S. Ct. 610 (2020); *see also* Brief for Pediatric Endocrine Society, et al. as Amicus Curiae in Support of Plaintiffs-Appellants and Reversal at 7–21, *D.H. v. Snyder*, No. 21-15668 (9th Cir. filed May 21, 2021).

Neither Section 1557 nor the Equal Protection Clause requires a party challenging a regulation on the ground that it unlawfully discriminates based on sex to demonstrate that they ultimately will be entitled to receive the benefit at issue if

the discriminatory exclusion is not enforced. *See Ne. Fla. Ch. of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("*Contractors of America*"); *Turner v. Fouche*, 396 U.S. 346, 362 (1970) (holding that even though plaintiffs did not have a right to be a school board member, they "do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications."); *Harrison v. Kernan*, 971 F.3d 1069, 1074 (9th Cir. 2020) (holding that a plaintiff does not need to prove that they are otherwise entitled to or would benefit from the challenged discriminatory policy in order to establish standing); *Cole v. Oravec*, 700 F. App'x 602, 604–05 (9th Cir. 2017); *Bras v. Cal. Pub. Util. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995); *see also Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) (holding that the relevant injury in a Free Exercise claim was denying a religious school the opportunity to apply for a government benefit on equal terms with other applicants).

As these authorities make clear, in a case alleging unlawful discrimination, the violation arises from the discrimination itself. Nothing more is required to obtain injunctive relief barring such discrimination, and AHCCCS cites no authority to the contrary.

For the same reasons, Defendants' claim that Plaintiffs lack standing unless they can show an entitlement to the requested surgeries has no merit. To have

standing, plaintiffs need only allege that they are being treated differently than others based on a protected characteristic. *See Contractors of America*, 508 U.S. at 664–65. AHCCCS cannot credibly claim that D.H. and John Doe fail to meet that burden. The record here is clear: Plaintiffs' healthcare providers determined that under the prevailing standards of care, male chest reconstruction surgery was necessary to treat their gender dysphoria. ER 442–43, ¶¶ 23–26; ER 446–47, ¶¶ 10–14; ER 458–60, ¶¶ 17–21; ER 509, ¶ 86; ER 511, ¶¶ 102-103. There is no other barrier to Plaintiffs seeking prior authorization for that procedure. Yet, AHCCCS will not even consider a request to cover that surgery because of its categorical exclusion of "gender reassignment surgeries." *See* ER 465, ¶ 18; ER 509, ¶ 87. AHCCCS did not deny coverage based on a determination that the requested surgeries were not medically necessary for Plaintiffs, or that the surgeries were "experimental." The denial was based solely on the categorical exclusion of "gender reassignment surgeries," and it is the facial discrimination codified in that exclusion that is at issue in this appeal.

If D.H. or John Doe sought prior authorization for a double mastectomy to treat breast cancer, the exclusion would not apply and AHCCCS's coverage determination would hinge on whether that procedure was medically necessary for them—based on an individualized assessment. Here, in contrast, AHCCCS refuses to conduct that individualized assessment because D.H. and John Doe are transgender and seek coverage for a surgical procedure that only transgender people

need. That immediate, concrete, and continuing injury is more than sufficient to establish standing.

AHCCCS seeks to rely on the fact that Plaintiffs' preliminary injunction motion originally requested not only that AHCCCS be enjoined from enforcing the exclusion but also that AHCCCS be ordered to cover Plaintiffs' surgeries. *See* Ans. Br. at 13. But as the record demonstrates, Plaintiffs clarified in their reply brief and at oral argument before the District Court that they were seeking only to enjoin enforcement of the challenged exclusion. *See* ER 171; ER 528–529; ER 534–536; ER 565–66; ER 568–569; ER 571–573. The preliminary injunction requested by Plaintiffs requires only that AHCCCS consider their request for coverage in the same way it would consider any other request for coverage, without reliance on the exclusion.

Plaintiffs originally requested in their motion that the preliminary injunction require AHCCCS to cover the surgeries because at the time they filed their complaint and motion, the exclusion was the only basis on which AHCCCS appeared to be denying Medicaid coverage. In response to the preliminary injunction motion, however, AHCCCS asserted a variety of other objections to coverage it had never identified previously, including contesting that male chest reconstruction surgery was medically necessary for D.H. and John. Accordingly, Plaintiffs limited the scope of their requested relief so that the only preliminary injunction requested from the

District Court was an order prohibiting AHCCCS from applying the exclusion in considering D.H. and John's requests for coverage, which would allow their requests for coverage to proceed to AHCCCS to be evaluated based on medical necessity.

In sum, Plaintiffs' Section 1557 and equal protection claims challenge Arizona's facial discrimination against transgender Medicaid beneficiaries and seek to enjoin its categorical exclusion of "gender reassignment surgeries." Those claims require only that Plaintiffs prove that the exclusion unlawfully discriminates by barring transgender Medicaid beneficiaries from receiving the same individualized assessment that non-transgender Medicaid beneficiaries receive. Plaintiffs did so, and on that basis, the District Court should have concluded that Plaintiffs are likely to prevail on these claims and preliminarily enjoined AHCCCS from enforcing the exclusion.

## II. AHCCCS's exclusion discriminates against transgender people based on sex in violation of the Affordable Care Act and Equal Protection Clause.

Excluding coverage for "gender reassignment surgeries," including male chest reconstruction surgery, facially discriminates against transgender Medicaid beneficiaries based on sex, in violation of both Section 1557 of the Affordable Care Act and the Equal Protection Clause. The District Court erred in concluding otherwise, and the arguments AHCCCS offers in support of the District Court's decision lack merit.

This Court and many other federal courts have long held that discrimination targeting transgender people violates federal laws prohibiting sex discrimination. *See*, *e.g*., *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019); *Kastl v. Maricopa Cmty. Coll. Dist*., 325 Fed. App'x 492, 494 (9th Cir. 2009); *Schwenk v. Hartford*, 204 F.3d 1187, 1201–02 (9th Cir. 2000); *see also*, *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F. 3d 1034, 1051–52 (7th Cir. 2017); *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir. 2011); *Smith v. City of Salem*, 378 F.3d 566, 572 (6th Cir. 2004).

AHCCCS does not cite, let alone attempt to distinguish, the above-cited cases. Instead, it rests solely on the erroneous claim that the Supreme Court's analysis of transgender discrimination in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), applies only to Title VII. As detailed in D.H. and John's Opening Brief, however, there is no basis for limiting *Bostock* in that manner. The federal government and many federal courts have recognized as much, based on the longstanding principle that federal sex discrimination statutes are to be construed consistently with one another. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); *C.P. v Blue Cross Shield of Illinois*, Case No. 3:20-cv-06145, 2021 WL 1758896, *4 (W.D. Wash. May 4, 2021); *Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020); U.S. Dep't of Health & Human Srvcs., Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972 (2021); U.S. Dep't of Justice,

Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (2021).

In light of this well-settled law, Plaintiffs have shown a likelihood of success on their Section 1557 claim. Once a plaintiff shows that a law discriminates based on sex, nothing further is required to establish liability under Section 1557; the government cannot justify the discrimination by attempting to show that it serves an important or even compelling governmental interest, as it can under the Equal Protection Clause. Because the exclusion, on its face, discriminates based on sex under Section 1557, Plaintiffs demonstrated that they are likely to prevail on that claim, and the District Court's contrary conclusion was legal error.

With respect to Plaintiffs' equal protection claim, Defendant fails to provide even a rational basis for excluding all "gender reassignment surgeries," much less "an exceedingly persuasive" justification, as required here. *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("*VMI*"). Rather than meeting that high standard, Defendant relies on the outlier opinions of two individuals who disagree with the medical consensus regarding gender reassignment surgeries. As this Court has already held, the mere existence of such outlier views is legally insufficient to justify the government's violation of well-established standards of care for the treatment of gender dysphoria. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 796 n.19 (9th Cir. 2019), *cert. den.*, 141 S. Ct. 610 (2020). That holding is controlling here and compels the

conclusion that Plaintiffs are likely to succeed on their equal protection claim.

AHCCCS erroneously contends that Plaintiffs' appeal of their Section 1557 and equal protection claims cannot succeed because they have not appealed the District Court's ruling on their Medicaid Act claim. With respect to that claim, the District Court stated that "Plaintiffs have not clearly shown the surgery is medically necessary for them or that it is safe or effective for correcting or ameliorating their gender dysphoria." ER 15. AHCCCS argues that this determination is "simply not subject to review by this Court" and precludes Plaintiffs from obtaining preliminary relief on their other claims.

AHCCCS's argument misstates the parties' respective evidentiary burdens. As shown above, Plaintiffs' Section 1557 claim requires only that Plaintiffs demonstrate that the exclusion discriminates based on sex, which they did. With respect to their equal protection claim, Plaintiffs have shown that the exclusion creates a sex-based classification that is subject to intermediate scrutiny. To the extent Defendants seek to justify that sex-based classification based on an argument that surgery is not a safe or effective treatment for gender dysphoria, that burden of proof is on AHCCCS, not Plaintiffs. AHCCCS must make an "exceedingly persuasive" showing on this point. *VMI*, 518 U.S. at 533. "The burden of justification is demanding and it *rests entirely on the State*." *Id.* (emphasis added); *see also Karnoski*, 926 F.3d at 1202 ("Defendants bear the burden of establishing that they

reasonably determined the policy 'significantly furthers' the government's important interests."); *Hibbs v. Dep't of Hum. Res.,* 273 F.3d 844, 855 (9th Cir. 2001), *aff'd,* 538 U.S. 721 (2003) ("[T]he burden is on the defender of such discrimination to prove that the standard has been met.")

The District Court made no factual finding that AHCCCS had shown surgery is ineffective or unsafe, or that some other "exceedingly persuasive" factor justified the categorical exclusion. The District Court's analysis of Plaintiffs' Section 1557 and equal protection claims was based entirely on its conclusion that the exclusion does not discriminate against transgender beneficiaries based on sex.[1] For the reasons stated below and in Plaintiffs' Opening Brief, that conclusion was legally erroneous. Nor has AHCCCS offered this Court an "exceedingly persuasive" justification. The opinions of its two experts, which contradict the established standards of care, do not come close to satisfying that demanding burden.

A. <u>Categorically excluding coverage for "gender reassignment surgeries" constitutes discrimination based on sex in violation of Section 1557.</u>

AHCCCS raises two arguments in support of the District Court's conclusion

---

[1] *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002) is the sole case AHCCCS cites in support of its position that the District Court's findings preclude review of Plaintiffs' discrimination claims. But because the District Court made no factual finding that AHCCCS carried its burden of showing lack of safety or efficacy or that the exclusion was otherwise justified, *Tahoe-Sierra* has no relevance here.

the exclusion is not facially discriminatory: (1) the exclusion targets a set of treatments or procedures, not transgender people; and (2) AHCCCS covers other medically necessary care for transgender people, thus there is no evidence that the exclusion is discriminatory. Both arguments miss the mark.

AHCCCS's attempt to recast its exclusion as one based on procedures rather than on transgender status has no merit. Prohibiting coverage for "gender reassignment surgeries" facially targets transgender beneficiaries, as they are the only ones who undergo "gender reassignment" and the only ones who require coverage for the excluded treatments. By excluding procedures needed only by transgender people, the exclusion expressly classifies based on transgender status and denies them coverage based on that status. The exclusion does not apply to non-transgender Medicaid beneficiaries who require similar surgical treatments prescribed for reasons other than gender reassignment. *Flack v. Wis. Dep't of Health Srvcs.*, 328 F. Supp. 3d 931, 952–53 (W.D. Wis. 2018) ("*Flack I*").

By discriminating against transgender people, the exclusion also discriminates based on sex. "[I]t is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Bostock*, 140 S. Ct. at 1741; *see also*, *Karnoski*, 926 F.3d at 1200–01; *Kastl*, 325 Fed. App'x at 493. Applying that principle to health care, federal courts have consistently found that coverage exclusions for treatments related to gender reassignment facially

discriminate based on sex. *See, e.g.*, *Fletcher v. Alaska*, 443 F. Supp.3d 1024, 1030–31 (D. Alaska 2020); *Kadel v. Folwell*, 446 F. Supp. 3d 1, 12–13, 17 (M.D.N.C. 2020); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 994–98 (W.D. Wis. 2018); *Flack I*, 328 F. Supp. 3d at 947–50.

AHCCCS's exclusion of "gender reassignment surgeries" is also facially discriminatory because the exclusion cannot be applied without considering a Medicaid beneficiary's sex. *See Bostock*, 140 S. Ct. at 1746. In order to know whether the exclusion applies to D.H.'s and John's requests for male chest reconstruction surgery, AHCCCS must know that they are transgender males as opposed to natal males seeks chest reconstruction surgery for some other purpose, such as to treat gynecomastia. AHCCCS has no response to this central point, other than to offer the irrelevant observation that the record does not reflect what treatments it covers for gynecomastia. Ans. Br. at 22 n.7.

In any case, the same principle can be shown using surgical treatment for breast cancer, a condition that AHCCCS concedes it covers. If a Medicaid beneficiary's natal sex is male and he seeks surgery to reconstruct his chest following a mastectomy to treat breast cancer, the exclusion does not apply. But if the beneficiary is a transgender male seeking male chest reconstruction surgery for gender dysphoria, the request for coverage will be denied. *See Flack I*, 328 F. Supp. 3d 931, 948 (W.D. Wis. 2018). In both cases, the surgery is medically necessary

under the generally accepted standards of care. The only variable that changed is the beneficiary's natal sex, demonstrating that sex is the but-for cause of the differential treatment under AHCCCS's exclusion for "gender reassignment surgeries." *See Bostock,* 140 S. Ct. at 1739–42.

AHCCCS's claim that the exclusion does not discriminate against transgender people because AHCCCS covers other treatments needed by transgender Medicaid beneficiaries also lacks merit. A health insurance plan—whether public or private— need not deny coverage for all treatments to a protected class to discriminate against that class with respect to a particular treatment. For example, an entity covered by Section 1557 would not be immunized from liability if it denied coverage for heart transplants based on a beneficiary's race or sex simply because it did not deny coverage of all treatments for heart disease to persons in those groups. Similarly, if AHCCCS categorically excluded coverage for medically necessary surgical treatment to men with breast cancer, it could not avoid liability for sex discrimination merely by showing that it covered chemotherapy for men with that condition.

AHCCCS's argument ignores the fact that federal antidiscrimination law protects individuals from *each act* constituting prohibited discrimination. *See Bostock*, 140 S.Ct. at 1740–41; *see also City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 709 (1978). It is irrelevant that some or even most of its policies or practices are not discriminatory. *See id.* This analysis applies with equal

force to Section 1557, which like Title VII, makes it unlawful to discriminate against an individual based on sex. 42 U.S.C. § 18116(a). Thus, AHCCCS's decision to provide coverage for non-surgical treatments needed by transgender people has no bearing on whether its exclusion for "gender reassignment surgeries" constitutes sex discrimination.

Nor does it matter that AHCCCS "is not indifferent to the trauma and emotional distress suffered by D.H. and John." Ans. Br. at 5. Section 1557 and the Equal Protection Clause do not require a plaintiff to prove that the defendant subjectively bears ill will toward or intends to harm the plaintiff. "[T]he absence of discriminatory *motive* does not transform a policy which discriminates on its face into a neutral policy with only a discriminatory effect." *Jeldness v. Pearce*, 30 F.3d 1220, 1231 (9th Cir. 1994) (holding that a prison program that paid men, but not women, for vocational training violated Title IX); *see also Bostock*, 140 S. Ct. at 1742 ("There is simply no escaping the role intent plays here: … an employer who discriminates on [the basis of sexual orientation and gender identity] inescapably *intends* to rely on sex in its decisionmaking.").

AHCCCS's attempts to distinguish the growing body of cases invalidating health coverage exclusions that target transgender people are baseless. Those attempts fall into three categories: (1) the defendants were other state-sponsored health plans, not Medicaid; (2) the plaintiffs were adults, not adolescents like D.H.

and John; or (3) those exclusions banned coverage for all treatments, not just surgical treatment. None of those distinctions are legally significant.

First, state-sponsored health coverage is subject to federal sex-discrimination laws, such as Section 1557, regardless of whether the plan is provided to state employees or Medicaid beneficiaries. *See* 42 U.S.C. § 18116(a); *Fletcher*, 443 F. Supp.3d at 1029–31 (holding that Section 1557 applies to state-sponsored health coverage for state employees); *Kadel*, 446 F. Supp. 3d at 12–14, 17–18 (same); *Boyden*, 341 F. Supp. 3d at 994–1003 (same); *Flack I*, 328 F. Supp. 3d at 946–53 (W.D. Wis. 2018) (holding that Section 1557 applies to Wisconsin Medicaid).

Second, the holdings of cases invalidating health coverage exclusions for treatments related to gender reassignment did not turn on the age of the plaintiffs, but rather on a determination that such exclusions impermissibly discriminate based on sex. *See Fletcher*, 443 F. Supp.3d at 1029–31; *Kadel*, 446 F. Supp. 3d at 12–14, 17–18; *Boyden*, 341 F. Supp. 3d at 994–1003; *Flack I*, 328 F. Supp. 3d at 946–53 (W.D. Wis. 2018). In addition, some of the plaintiffs in those cases were minors. *See* Complaint at ¶¶ 8, 10, *Kadel v. Folwell*, Case No. 19-CV-272 (M.D.N.C. filed Mar. 11, 2019); *Flack v. Wis. Dep't of Health Servs.*, 331 F.R.D. 361, 368 (W.D. Wis. 2019) ("*Flack II*").

Finally, for the reasons stated above, excluding "gender reassignment surgeries" discriminates based on transgender status and thus on sex. Because the

exclusion targets an established medical treatment required only by transgender people, it discriminate based on transgender status; it is immaterial whether the exclusion discriminates against all transgender people or only some of them. *See Boyden*, 341 F. Supp. 3d at 997; *Flack I*, 328 F. Supp. 3d 947–49; *Kadel*, 446 F. Supp. 3d at 12–14, 17.

Consequently, Plaintiffs have established a likelihood of success on the merits of their Section 1557 claim. The District Court's legal error in concluding otherwise warrants reversal.

### B. Defendant failed to provide an "exceedingly persuasive justification" for categorically excluding male chest reconstruction surgeries.

For the reasons outlined above—and in Plaintiffs' Opening Brief— AHCCCS's exclusion discriminates against transgender people based on sex. That is sufficient to establish a likelihood of success on their equal protection claim unless AHCCCS carries its heavy burden of showing that the exclusion is supported by an "exceedingly persuasive justification." *VMI*, 518 U.S. at 533. AHCCCS has failed to do so.

This Court has previously held that discrimination against transgender people—either based on their transgender status or sex—is subject to heightened scrutiny. *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019). That conclusion is consistent with the holdings of federal courts across the country, including other Courts of Appeals, both before and after *Bostock*. *See, e.g., Adams*

-17-

*v. Sch. Bd. of St. John's Cnty., Fla.*, --- F.4th ---, 2021 WL 2944396 at \*4 (11th Cir. Jul. 14, 2021); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607–08 (4th Cir. 2020); *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F. 3d 1034, 1051–52 (7th Cir. 2017); *Smith v. City of Salem*, 378 F.3d 566, 572 (6th Cir. 2004). AHCCCS cannot satisfy that exacting standard.

AHCCCS offers the testimony of its experts that male chest reconstruction surgery is "experimental" as a purported justification for the exclusion, but that is legally insufficient to meet its burden. As an initial matter, AHCCCS failed to submit evidence that any of this material, or any similar purported concerns, were considered by AHCCCS as a justification for the regulation when it was promulgated in 1982. Absent such evidence, AHCCCS cannot prove that its proffered justification is "genuine, not hypothesized or invented *post hoc* in response to litigation." *VMI*, 518 U.S. at 533. Courts have consistently invalidated regulations that discriminate against transgender people where the government defendant has been unable to meet this basic requirement of contemporaneous consideration of relevant evidence. *See, e.g.*, *Flack v. Wis. Dep't of Health Srvcs.*, 395 F. Supp. 3d 1001, 1021–22 (W.D. Wis. 2019) ("*Flack III*"); *Corbitt v. Taylor*, --- F. Supp. 3d ---, 2021 WL 142282, at \*9–10 (M.D. Ala. Jan. 15, 2021). This alone is fatal to AHCCCS's defense and warrants reversal of the District Court's determination regarding D.H. and John's likelihood of success on the merits.

In addition to being a *post hoc* invention first proffered in the context of this litigation, AHCCCS's claim that male chest reconstruction surgery is experimental is also insufficient as a matter of law. AHCCCS's justification rests entirely on the declarations from Dr. Laidlaw and Dr. Levine, which merely establish that they disagree with the overwhelming medical consensus about the efficacy of male chest reconstruction surgery, and an irrelevant judicial decision from the United Kingdom. Ans. Br. at 28–29. That evidence does not come close to satisfying the demanding burden required under the Equal Protection Clause.

The opinions of Dr. Laidlaw and Dr. Levine merely express their outlier views; they do not dispute, nor could they credibly do so, the existence of a broad and longstanding medical consensus regarding the safety and efficacy of male chest reconstruction surgery as a treatment for gender dysphoria. That medical consensus, based on decades of research and practice, is reflected in the WPATH standards of care, which have been endorsed by the American Academy of Pediatrics, the American Medical Association, the American Psychiatric Association, the American Psychological Association, the Endocrine Society, the American College of Surgeons, and many other professional medical groups. As this Court recognized in *Edmo*, "[t]here are no other competing, evidence-based standards that are accepted by any nationally or internationally recognized medical professional groups." 935 F.3d 757, 769 (9th Cir. 2019), *cert. den.*, 141 S. Ct. 610 (2020) (cleaned

up). That finding applies with equal force here, as does this Court's holding that "when the medical consensus is that a treatment is effective and medically necessary," government officials cannot evade their constitutional obligations simply by "following the view of outliers without offering a credible medical basis for deviating from the accepted view." *Id.* at 796 n.19. While *Edmo* involved an Eighth Amendment claim, its reasoning is dispositive here, where the government—not the plaintiff, as in Eighth Amendment claims—bears the burden of proof and must show an "exceedingly persuasive" justification for its disparate treatment of transgender patients.

AHCCCS's reliance on *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019), is unavailing. Ans. Br. at 29 n.10. As this Court found in *Edmo*, *Gibson* is an "outlier" that relied on "an anomalous procedural approach" and outdated evidence. *Edmo*, 935 F.3d at 795–96. "Most fundamentally, *Gibson* relies on an incorrect, or at best outdated, premise: that '[t]here is no medical consensus that [gender reassignment surgery]is a necessary or even effective treatment for gender dysphoria.'" *Id*. at 795 (internal citation omitted).

AHCCCS seeks to distinguish *Edmo* by claiming that Plaintiffs have not shown that gender reassignment surgery is medically necessary for them, based on their individual medical needs. But that question has no bearing on the only relevant legal issue before the Court: whether AHCCCS can lawfully enforce a categorical

rule excluding "gender reassignment surgeries," thereby precluding an assessment of individualized medical need. As *Edmo* recognized, there is a well-established medical consensus that such surgeries are safe and effective, as reflected in the prevailing standards of care for treating gender dysphoria, and there are no competing evidence-based standards. 935 F.3d at 769.

In sum, this Court's holding in *Edmo* that the government cannot evade that well-established medical consensus simply by presenting outlier views is controlling, and the District Court erred by disregarding it.[2]

AHCCCS's reliance on the decision in *Bell v. Tavistock* is equally unpersuasive. The issue in *Bell*, which is now on appeal, is whether minors are permitted to consent, without parental involvement, to puberty-blocking medication for the treatment of gender dysphoria. [2020] EWHC 3274, [8]-[9] (Admin). That opinion explicitly disclaims any holding on the merits of puberty-blocking medication. *Id.* at [9] ("The court is not deciding on the benefits or disbenefits of treating children with [gender dysphoria] with [puberty blockers], whether in the long or short term…. That is not a matter for us."). A subsequent decision from that same court affirmed that *Bell* did not affect parents' ability to consent to such

---

[2] The amicus briefs filed in support of Defendant do not change this analysis. Like Drs. Laidlaw and Levine, these *amici* simply disagree with the prevailing standards of care.

treatments for their children. *A.B. v. Tavistock*, [2021] EWHC 741, [68]-[69] (Fam). Regardless, this case does not concern puberty-blocking medications, and consent is not an issue here. D.H.'s and John's respective guardians support their effort to obtain male chest reconstruction surgery and Susan will provide consent for John's surgery, if needed.[3]

The cost of covering male chest reconstruction surgery is also a legally inadequate justification for AHCCCS's exclusion for "gender reassignment surgeries." Other than its repeated assertions that covering male chest reconstruction surgery would be expensive, AHCCCS offered no evidence demonstrating the associated costs. Even if AHCCCS had offered evidence of the cost, this Court and others have repeatedly rejected cost as a sufficient basis to justify a law or practice that discriminates based on a protected characteristic. *See, e.g.*, *Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011); *Flack III*, 395 F. Supp. 3d at 1021–22 (holding that increased costs could not justify excluding treatments related to gender reassignment).

The justifications advanced by AHCCCS cannot satisfy rational basis, let alone the far heavier burden imposed by intermediate scrutiny. The District Court erred in concluding otherwise.

---

[3] As previously noted, D.H. is currently eighteen years old and John will turn seventeen this December.

### III. D.H. and John Doe established that denial of the requested injunction would result in irreparable harm.

AHCCCS's arguments on irreparable harm are based on a mischaracterization of the injunction sought by D.H. and John Doe. As shown above, Plaintiffs clarified the scope of the injunction they were seeking in both their reply brief before the District Court and at oral argument. The injunction Plaintiffs requested was solely to preclude AHCCCS from enforcing the exclusion.

That request is a quintessential prohibitory injunction. *See Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017).[4] For that reason, the cases cited by AHCCCS are easily distinguishable. The portion of the injunction at issue in *Heckler v. Lopez* required Social Security to pay benefits to people who had been determined to be ineligible. 463 U.S. 1328, 1329 (1983) (Rehnquist, J., in chambers). Likewise, the injunction obtained in *Katie A. v. Los Angeles County* required the state to cover wraparound mental health services for the plaintiffs. *See* 481 F.3d 1150, 1153 (9th Cir. 2007). Unlike *Heckler* and *Katie A.,* Plaintiffs are not seeking a preliminary

---

[4] AHCCCS incorrectly asserts that this Court's opinion in *Hernandez* was based solely on the mandatory injunction standard. The opinion treated the injunction's requirement that the federal government hold "future initial bond hearings in accordance with constitutional processes" as prohibitory. *Hernandez*, 872 F.3d at 998. But the portion of the injunction that required new bond hearings for detainees who were subjected to the now-enjoined process was analyzed under the mandatory injunction standard. *Id.* at 999–1000.

injunction requiring payment of benefits for the individual plaintiffs. They are merely seeking to enjoin enforcement of the exclusion against them as individuals so that their request for coverage may be evaluated in the same way as any other request for coverage, without application of the exclusion. Because of the limited scope of Plaintiffs' requested injunction, the District Court committed reversible error by treating D.H. and John's requested injunction as a mandatory injunction.

Applying the correct legal standard—that applicable to prohibitory injunctions—D.H. and John established irreparable harm by demonstrating that they are likely to prevail on the merits of their equal-protection claim. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (holding that "the deprivation of constitutional rights unquestionably constitutes irreparable injury" (internal citations and quotation marks omitted)). Here, Plaintiffs have shown they are being denied their right to equal protection under the laws by Defendant's denial of their requests based solely on the exclusion, not on any individualized assessment.

In addition, the severity of the harm that D.H. and John will suffer in the absence of the injunction easily meets the threshold for a preliminary injunction. This Court has repeatedly held that the denial of needed medical care constitutes irreparable harm sufficient to warrant preliminary relief, even under the mandatory-injunction standard. *See Dahl v. HEM Pharm., Corp.*, 7 F.3d 1399, 1403–04 (9th Cir. 1993) (denying patients additional doses of an experimental medication where

the participants believed the medication alleviated their condition satisfied the mandatory-injunction standard); *see also M.R. v. Dreyfus*, 697 F.3d 706, 733 (9th Cir. 2012); *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004); *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982). The record before the District Court was replete with evidence that D.H. and John would experience serious short- and long-term harm if AHCCCS continued to deny them the opportunity to seek coverage for male chest reconstruction surgery. *See, e.g.*, ER 134–36, ¶¶ 5, 7, 9–11; ER 445–47, ¶¶ 6, 13–14; ER 450–51, ¶¶ 12–17; ER 455, ¶¶ 14–15; ER 458–60, ¶¶ 13, 16–21; ER 465–66, ¶¶ 16, 19; ER 468–70, ¶¶ 5, 12–14.

Nor can D.H. and John afford to pay for the surgery and seek reimbursement later; for this reason, their injuries cannot adequately be compensated through monetary relief. Although, as AHCCCS suggests, there are ways to raise money to cover the cost of male chest reconstruction surgery, there is no guarantee that D.H. and John would be able to raise sufficient funds. D.H. and John's ability to vindicate their civil rights should not depend on the success of a fundraising campaign through GoFundMe or another similar website.

For all these reasons as well as those set forth in Plaintiffs' Opening Brief, the District Court erred in finding that D.H. and John's harm was not irreparable.

### IV. The balance-of-equities and public-interest factors tip sharply in favor of D.H. and John Doe.

AHCCCS offers no substantive response to D.H. and John's arguments on the

remaining preliminary injunction factors. For the reasons stated in Plaintiffs' Opening Brief, those factors favor the issuance of a preliminary injunction.

## V. The injunction sought by D.H. and John Doe is more limited than the ultimate relief sought in their complaint.

Granting D.H. and John's requested injunction would not provide them the full relief they seek in their complaint. AHCCCS's claim to the contrary is based on its mischaracterization of the requested injunction. The injunction is narrowly focused on preventing the serious harms that D.H. and John will experience without timely relief, but it does not supplant the need for full adjudication of the merits of the legal claims raised by D.H. and John on their own behalf as well as that of the putative class. The preliminary injunction is limited to barring AHCCCS from enforcing the exclusion when D.H. and John subsequently submit their individual requests for coverage for male chest reconstruction surgery. By contrast, the complaint seeks a permanent injunction prohibiting AHCCCS from enforcing the exclusion as to the putative class and a declaration that the exclusion violates federal law, including provisions of the Medicaid Act—claims that are not on appeal here. Thus, the limited scope of the requested injunction is not a basis for denying D.H. and John the relief they seek on appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to reverse the District Court's order and remand with instructions to enter a preliminary injunction

prohibiting Defendant from enforcing the categorical exclusion of coverage for "gender reassignment surgeries."

DATED:  AUGUST 4, 2021          Respectfully submitted,

**NATIONAL CENTER FOR LESBIAN RIGHTS**

  /s/ Asaf Orr
Asaf Orr
Shannon Minter
Christopher F. Stoll
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
T: +1 415 392 6257
F: +1 415 392 8442
Email: aorr@nclrights.org
        sminter@nclrights.org
        cstoll@nclrights.org

Brent P. Ray
KING & SPALDING LLP
353 N. Clark Street, 12th Floor
Chicago, Illinois 60654
T: +1 312 995 6333
F: +1 312 995 6330
Email: bray@kslaw.com

Daniel C. Barr
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
T: +1 602 351 8085
F: +1 602 648 7085
Email: dbarr@perkinscoie.com
        jhowe@perkinscoie.com

Abigail K. Coursolle
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 750
Los Angeles, CA 90010
T: +1 310 204 6010
Email: coursolle@healthlaw.org

*Attorneys for Plaintiff-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**   21-15668

I am the attorney or self-represented party.

**This brief contains** __6,172__ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   /s/Asaf Orr                            **Date**   08/04/2021
*(use "s/[typed name]" to sign electronically-filed documents)*